**Wanda J. BIGLOW, Plaintiff,**

**v.**

**ALBERTSON'S, INC., Defendant.**

**No. 98–1062–JTM.**

United States District Court,
D. Kansas.

March 4, 1999.

not meet the minimum qualifications for the    position.

William L. Fry, William Fry & Associates, Wichita, KS, for Wanda J. Biglow, plaintiff.

David H. Moses, Curfman, Harris, Rose & Smith, L.L.P., Wichita, KS, Walter S. Cowger, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, TX, for Albertson's Inc, defendant.

## MEMORANDUM ORDER

MARTEN, District Judge.

The present action is a racial discrimination claim brought by a former employee of Albertson's, Wanda Biglow. Albertson's contends it fired Biglow because she was drunk on the job. Biglow contends she was fired because of racial discrimination. Albertson's has moved for summary judgment on Biglow's claims. For the reasons stated herein, the court will grant the defendant's motion for summary judgment.

In addition to the defendant's motion to strike, also before the court is Albertson's motion to strike portions of Biglow's response. As in most cases in which motions to strike accompany summary judgment pleadings, the defendant's motion is essentially superfluous. Arguments against the admissibility of evidence relied upon by the opposing party are more properly advanced in the defendant's reply memorandum. As noted earlier, the court will grant the motion for summary judgment; the motion to strike will be denied as moot.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988).

The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985) The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Biglow began working at Albertson's in January 1992 as a cashier at Store 2212 in Wichita, Kansas. In February 1994, she was promoted to the position of Video/Lobby Supervisor.

On Monday, February 20, 1995, Biglow was terminated by Albertson's for being intoxicated at work the previous Saturday.

The events of February 18 are presented by Albertson's in its Uncontroverted Facts ¶¶ 3—6.

Biglow does not deny that she arrived 20 minutes late for her 2:00 p.m. shift. A co-worker, Kowanda Thornton, was shopping at the store while off duty, and rented a video from Biglow. According to Thornton's affidavit, Biglow was acting strangely—she could not remember his name and took an inordinately long time to ring up the rental. Thornton believed Biglow was intoxicated, and told Store Director Butch Fisk this. Fisk walked to the video department, and was told by Cara Andres, who also worked in the video department, that she also believed Biglow was intoxicated.

The perceptions of Thornton and Fisk are unrebutted. Nor does Biglow effectively deny either her ability to remember Thornton's name or her difficulty in ringing up the rental.[1]

Fisk asked Biglow to come to his office so he could observe her behavior. Service Supervisor Emily Held was also present. Biglow appeared intoxicated at the meeting. She knocked her glasses off more than once and slurred her speech. During the meeting, Biglow admitted that she had had a can of beer approximately two hours before reporting to work. She told Fisk and McKinney they were discriminating against her because she was black.

In her response, Biglow denies being intoxicated, citing her deposition testimony, and stating she was excited that another coworker, Brian Coleman, had managed to get some costumes from the Emporium for a Disney's *Lion King* promotion they were hoping to have approved by Fisk. (Plf. Resp. at ¶ 46). The evidence cited in support of this denial, however, Plf. Exh. A, Biglow dep. at 160–164, fails to provide any support for Biglow's denial. At no point in the cited testimony does Biglow deny being drunk. In the only mention of the "Emporium," the testimony refers not to her own but to *"Brian's excitement* because Brian had called the—I think it's the Emporium." (Id., at 163 l.13–14) (emphasis added).

Fisk decided that Biglow was intoxicated while on duty. He sent her home and told her to return to his office on Monday. Biglow returned on Monday and met with Fisk and Drug Manager Scott McKinney, her direct supervisor. Biglow did not express any remorse at the meeting for her conduct on Saturday,[2] and told them they should do whatever they felt was necessary concerning the incident. Fisk told her he would tell her later that day what discipline would be imposed. Later the same day, Fisk told Biglow her employment was terminated.

At the time, Albertson's employee policy specifically provided that intoxication while on duty was grounds for discharge. Biglow knew of this policy, which she acknowledged when she began working for the company. It is uncontroverted that Albertson's has terminated other employees for intoxication at work.

1. Biglow does generally deny the lack of memory and difficulty with the transaction, but offers no evidentiary support for the denial, contrary to D. Kan. Rule 56.1. See Resp. at ¶ 3, at 3. Her response instead cross-references her own Additional Material Fact ¶ 49. This paragraph, however, merely provides the testimony of a Dorothy Bogisch, who states that Biglow did not appear drunk to her. There is no evidence, however, as to the extent of the interaction between Biglow and Bogisch on the date of February 2, 1995. Moreover, there is no evidence that Bogisch observed or did not observe Biglow's handling of the transaction with Thornton, and thus is unable to deny his statements that Biglow could not remember his name or that she had difficulty ringing up the transaction. Strikingly, Biglow does not cite any testimony by the one person who would be able to controvert Thornton's assertion—herself.

2. Biglow acknowledges she showed no remorse on Monday, stating instead that Albertson's policies prohibit open containers of alcohol on the premises, and that she had consumed her beer prior to coming to work. It is uncontroverted, however, that Albertson's policies also prohibit on-the-job intoxication.

While not controverting that other employees were terminated for intoxication, Biglow's response presents evidence that, in some instances, Albertson's employees who were white were not discharged for intoxication. (Resp. at ¶¶ 58–66). The cited evidence does not support Biglow's assertion. In only one of the cases (Donna Benson) is it established that Fisk was informed of the alleged intoxication. And, in her case, the only cited evidence (Fisk's deposition testimony) for Biglow's argument not only directly states that the two managers in charge of the store investigated the report and found Benson was not drunk, he also clearly states Benson was not white. (Exh. D, Fisk dep. at 38).[3]

Fisk's decision was based solely on his determination that Biglow was intoxicated.

In the following months, Biglow made numerous telephone calls to the store, speaking to Cara Andres, David Jones, and Drug Manager McKinney. According to Jones, Biglow told him in one of these calls that her boyfriend—in a conspiracy with unnamed Albertson's employees—had "gotten her drunk" on February 18, 1995. In several of her calls to McKinney, Biglow sounded intoxicated and made threats to "fuck" Fisk and Andres. In one of the calls to McKinney, Biglow threatened to physically harm Andres, which caused McKinney to file a complaint with the Wichita Police Department.

Biglow denies the contentions of fact in the preceding paragraph, but the only evidence she cites in her denial is her own deposition testimony (Def. Exh. C., Biglow dep. at 478). At that portion of her deposition, Biglow states she never told anyone at Albertson's "that Mike Ybarra had gotten her drunk that morning." Nowhere does Biglow cite any evidence to support her denial of the threatening phone calls reported by McKinney.

Biglow does not claim to have had any contract of employment with Albertson's. When she started work with Albertson's, she was given a handbook which explicitly stated she was an "at-will" employee who could be terminated at any time and for any reason.

In 1995 and today, classes in Albertson's Career Advancement Program ("CAP") have been held annually. Different series of classes are held for different departments. The series of eight to eleven classes is held from about February to October of each year. In November of 1994, employees in the stores of Albertson's 2200 division, which included Biglow's store, were invited to apply to participate in the 1995 CAP program.

The only time Biglow applied to participate in the CAP program was in January or February of 1995. In response to her application, a Mr. Harmon in the Wichita store told Biglow she should participate in a Cornell University extension program. Biglow asserts that "everyone else was apparently being put right through to CAP." (Resp. at ¶ 16, p. 6). Biglow's assertion is conclusory and without any indication that it is premised on personal knowledge. Biglow does not identify any white workers in Wichita who participated in the CAP in 1995.

In fact, Biglow was the only employee of the drug department of any of the Wichita stores who applied to participate in the program. According to the testimony of

---

**3.** The same lack of proof applies to the other cited employees. Artina Rosskelly admitted coming to work drunk, but does not state her condition was ever reported to Albertson's management. Sonya Schneiter has testified that she saw Jeff Jordan, the Grocery Manager, either intoxicated or high (Def. Exh. F, Schneiter dep. at 35), but there is no evidence that she reported Jordan's condition to Fisk. Moreover, Schneiter's testimony is based only on her speculation that Jordan was "just real erratic and, you know, . . . he was like miss-

ing work a lot." (Id. at 39). Biglow also cites Schneiter's testimony for the alleged on-the-job drunkenness of Donna Benson, but Schneiter's testimony is consistently prefaced by what she "heard" from another employee, and that she herself had not seen Benson intoxicated. (Id. at 34–35; 43). Artina Rosskelly testified that a David Jones came to work smelling of alcohol (Def. Exh. H, Rosskelly dep. at 30), but there is no evidence that Jones's alleged intoxication was reported to Fisk.

Albertson's managers, the only reason Biglow was not selected to participate in the program was that the company decided to not have drug department CAP classes for just one person in Wichita.

In her response, Biglow cites the experience of Brian Leg, a white employee who worked in the Oklahoma City meat department in 1998, and who participated in a CAP class in which he was the only employee. The evidence indicates, however, that this decision was made nearly three years after Biglow's termination and was made by a supervisor not involved in the decision regarding Biglow's CAP participation. Moreover, Leg was not permitted to take the CAP class in Oklahoma City, but was required to drive to Tulsa. Albertson's evidence indicates the company did not believe it was appropriate to have Biglow travel to Tulsa (driving twice as far as Leg) for each 4–hour class.

Biglow states she was denied a December 1993 request to transfer to the customer service department due to her race. Biglow states she was told the transfer was denied because the new employee would have to work all hours, while she was on "set hours." Biglow states a white employee named "Lorna" was given the job even though Lorna also had "set hours."

However, Albertson's records indicate the only "Lorna" employed at the store during the relevant time period was a cashier employed at $5.70 per hour. In September, she was promoted to Customer Service Supervisor, thereby making $6.50 an hour. Throughout this period, Biglow was earning $8.50 per hour. There is no evidence that, in not receiving the Customer Service job, Biglow suffered any economic detriment.

Biglow cites a variety of incidents which she believes demonstrate racial discrimination at Albertson's. According to Sonya

Schneiter, Biglow was the only black manager in the Wichita division.[4] Schneiter testified that Biglow appeared to do her work well. Biglow states that Fisk treated her differently from other supervisors, and that he would pick on her at meetings, and criticize her and embarrass her.

In support of her contention that Fisk was unfair toward her, Biglow cites Schneiter's deposition, but the cited testimony, in which Schneiter states that Fisk "would say things that were completely uncalled for," also clearly indicates that Schneiter felt those comments were not directed solely at Biglow. (Plf.Exh. F, Schneiter dep. at 91). Schneiter states she "didn't feel like, you know, he was being fair to me" and that Fisk "certainly had his favorites that he very seldom picked on *but he pretty much picked on all of us at some point.*" (Id.) (emphasis added).

In the same vein, Schneiter testified Fisk talked down to Biglow, but she also testified that that was "not to say there weren't times he also talked down to other managers." (Id., at 28). Otherwise, Schneiter testified Fisk frequently corrected Biglow. (Id., at 77). The evidence does not state what these "corrections" were about or whether they were unfairly made for conduct which did not deserve correction.

Biglow asserts Fisk made her work mandatory Saturdays when none of the other managers were required to do so, and that he transferred people in her division without her knowledge. On one occasion, Biglow made an announcement over the store's loud speaker, an announcement which included the word "wolf." Fisk later corrected her pronunciation, telling her she sounded like a dog saying "woof." On approximately the same day, Biglow states she was further insulted by Fisk, when she told him of a proposal for the store to promote sales of *Lion King* videos. Bi-

4. Biglow, in support of her claims of racial discrimination, also cites the testimony of Jerry Turner. Turner's evidence relates to his own claims of racial discrimination against Albertson's. (Resp. at ¶¶ 26–29). His claims do not involve any of the incidents involving the plaintiff Biglow, and indeed appear to relate also to different managers and a different store.

glow suggested a promotion on Radio 93.9, which Schneiter has identified as an African–American "hip-hop" radio station. (Plf.Exh. F, Schneiter dep. at 78). According to Biglow, Fisk asked "What are you trying to do, bring the 'Boys–'n–the–Hood' in?" (Plf.Exh. B, Biglow dep. at 256). Biglow also contends that Fisk told Scott McKinney, who was also present, something "like, 'We can't fight them off. Can we, Scott?' " (Id.)

In support of her claim of retaliation, Biglow states on one occasion a friend of Biglow's called Albertson's to get a reference, and was told Biglow was fired for being drunk on the job. There is no evidence anyone else was told that, that is, that any true prospective employers were told this. Biglow also cites a "crank call" she received from someone saying they had a warrant for her arrest. There is no evidence the call had anything to do with Albertson's.

Biglow also cites, as evidence of retaliation, that she was arrested in 1998, purportedly due to a warrant stemming from defendant's report. The cited portion of her deposition indicates only that she was arrested with a friend for a tail light being out. (Plf.Exh. C., Biglow dep. at 462.) There is no evidence this arrest was actually the result of some conspiracy involving Albertson's.

### Conclusions of Law

The court finds Biglow's claims of racial discrimination pursuant to Title VII and 42 U.S.C. § 1981, alleging that she was terminated due to racial discrimination, must be dismissed because she has failed to present a triable case of discrimination. Specifically, Biglow has failed to show the reason for her discharge, being drunk on the job, was false. Biglow has failed to show that the stated rationale for her employer's action—termination for on the job drunkenness—was a pretext for discrimination.

In determining whether to grant summary judgment on a Title VII claim, the court applies the burden-shifting framework set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff initially bears the burden of production to establish a prima facie case of a Title VII violation. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. This burden may be met by a showing that the plaintiff (1) belongs to a minority group; (2) was performing her work satisfactorily; (3) was subjected to adverse job action; and (4) was replaced with a non-minority. *See Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1534 (10th Cir.1995). Once a plaintiff has met this burden, discriminatory intent on the part of the defendant is presumed and the burden shifts to the defendant to articulate a facially nondiscriminatory reason for the challenged employment action. *Id.* at 1533; *Beaird v. Seagate Technology*, 145 F.3d 1159, 1165 (10th Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 617, 142 L.Ed.2d 556 (1998). If the defendant provides a nondiscriminatory reason for the employment action, the plaintiff may defeat summary judgment by presenting sufficient evidence such that a reasonable jury could conclude the proffered nondiscriminatory reason for the employment action is pretextual, that is, "unworthy of belief." *See Beaird*, 145 F.3d at 1165 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995)). *See also Beaird*, 145 F.3d at 1176 (Tacha, J., concurring in part, dissenting in part) ("Not only must the plaintiff produce evidence of pretext, but the pretextual evidence must be of the nature or quality from which a reasonable jury could infer illegal discrimination.").

In the present case, four witnesses have indicated they believed Biglow was intoxicated (Thornton, Andres, Held, and Fisk). In contrast, Biglow has presented no evidence from anyone who closely observed her on the day in question to the effect that she was not intoxicated. Indeed, Biglow has not even provided any direct testimony herself that she was not intoxicated.

■ Even if the plaintiff had cited testimony that she was not, in fact, intoxicated,

the plaintiff's action must still be dismissed, since there is no evidence that sobriety was apparent to Biglow's supervisor, and that, in consequence, the stated rationale for the dismissal was a pretext for racial discrimination. That is, there remains uncontroverted evidence suggesting it was reasonable for Fisk to believe Biglow was drunk. Biglow concedes she was drinking before coming to work. She concedes she was late for her shift. As noted earlier, at least three other persons who saw Biglow on February 18 believed she was intoxicated. Moreover, Biglow never directly controverts, with supporting evidence, that she was unable to remember Thornton's name and to ring up his video rental in a reasonable amount of time. Accordingly, it is uncontroverted that Biglow was behaving in a manner consistent with intoxication.

Biglow does try to show that other employees were not terminated for being intoxicated on the job. But, as noted earlier, the evidence she cites shows either that these incidents mainly involve rumors and innuendo that other employees were intoxicated. They do not involve, as here, an employee who was unquestionably intoxicated on the job, and who was personally observed in such a state by a manager. The plaintiff presents no evidence that a person in such a condition was not subject to strong discipline.

■ Biglow's claims for racially-motivated, non-promotion claims also fail. As to the alleged failure to promote to Customer Service in 1993, first, the uncontroverted facts demonstrate that, rather than being a "promotion," the person given the job was earning significantly less than what Biglow was already making. Second, any such a claim would be outside the 300 days prior to the filing of Biglow's charge of discrimination and would therefore be time barred, as there is no basis for suggesting there was a "continuing violation" involving the failure to promote. Biglow's claim that Albertson's failed to permit her to participate in the CAP program also fails as a factual matter, since she has failed to provide evidence that her non-participation was the product of racial discrimination, or that the stated reason for nonparticipation was pretextual.

Biglow also contends she was subjected to racial harassment while employed by Albertson's. Read most favorably to Biglow, the evidence discussed earlier would permit a finding that Biglow—along with the other employees at Albertson's—was frequently criticized by Fisk. Fisk scheduled Biglow for Saturday work and transferred workers without her knowledge. On one occasion, he corrected the way she pronounced the word "wolf," and on another, responded to her proposal to conduct a promotion on a local hip-hop radio station with the question "What are you trying to do, bring the Boys–'n–the–Hood in?" and told another worker "We can't fight them off. Can we, Scott?"

■ There is evidence that Fisk was rude. But Biglow has provided no evidence of any racial slurs. Only in the (one) incident involving the promotion of the *Lion King* video did Fisk make a comment which is even arguably racial in nature. A plaintiff claiming racial harassment must show more than "a few isolated incidents of racial enmity." *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1263 (10th Cir.1998) (citing *Hicks v. Gates Rubber*, 928 F.2d 966 (10th Cir.1991)). " 'Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.' " *Witt v. Roadway Express*, 136 F.3d 1424, 1434 (10th Cir.1998) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 286, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). The isolated *Lion King* comment by Fisk does not rise to this level.

■ Next, the court must conclude that Biglow's claims of retaliation should be dismissed. Although clearly aware of the underlying facts which she now asserts as her basis for retaliation (e.g., her arrest), Biglow made no mention of "retaliation" in her EEOC charge. Rather, her charge was restricted to the claim that she experienced racial discrimination *during* her employment. There was no allegation in the

EEOC charge, or in her complaint there was no mention of *post-termination* retaliation. The court hereby dismisses such claims currently advanced by the plaintiff. *See Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Services,* 165 F.3d 1321 (10th Cir.1999). Moreover, Biglow's claims of retaliation also fail on the merits because she has failed to provide any evidence of a causal connection between the protected activity and the allegedly retaliatory acts.

■ Finally, Biglow has included a claim for damages under 42 U.S.C. § 1981. However, the Supreme Court has held that an at-will employee does not have a claim under Section 1981, *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), and plaintiff has failed to provide any basis for believing the law has changed.

IT IS ACCORDINGLY ORDERED this 4th day of March, 1999, that the defendant's motion to strike (Dkt. No. 52) is denied; its motion for summary judgment (Dkt. No. 42) is granted.