**Rodney PETTIS, Plaintiff,**

v.

**ALEXANDER GRAPHICS, LTD., d/b/a Alexander Press, Defendant.**

**No. IP 97–1969–C H/G.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 11, 1999.

Denise K. LaRue, Lester H. Cohen, Bradley L. Wilson, Haskin Lauter Cohen & Larue, Indianapolis, IN.

Jack H. Rogers, Patricia L. Ogden, Barnes & Thornburg, Indianapolis, IN.

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE

HAMILTON, District Judge.

This is a race discrimination case filed by plaintiff Rodney Pettis, an African-American who worked for defendant Alexander Graphics, Ltd., for a period of four months before he was terminated. At the heart of this case is a single incident that occurred on the morning of April 25, 1996. After both Pettis and a white co-worker, Duane Griffith, showed up for work at the usual time, instead of two hours early as they had been directed for mandatory overtime, there occurred a loud, angry, and vulgar exchange between Pettis and his supervisor. Pettis was terminated the following Monday. He alleges race discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Defendant Alexander Graphics has moved for summary judgment, and plaintiff Pettis has moved to strike portions of defendant's brief. The evidence submitted by the parties shows typically messy and contradictory testimony about the events of that morning and defendant's treatment of late employees—the type of testimony that precludes resolution of this case on a motion for summary judgment.

### Plaintiff's Motion to Strike

Pettis has moved to strike those portions of Alexander Graphics' brief in support of its motion for summary judgment that address some of his prior employment history. Pettis contends his employment history is irrelevant. Alexander Graphics did not respond to the motion to strike. The court agrees that Pettis' employment history is irrelevant, at least for purposes of summary judgment, and therefore strikes the challenged material at pages 4–5 of Alexander Graphics' brief.

### Defendant's Motion for Summary Judgment

Defendant Alexander Graphics has moved for summary judgment on both counts of Pettis' complaint, under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. As explained briefly below, the court denies Alexander Graphics' motion for summary judgment on both of Pettis' claims.

I. *42 U.S.C. § 1981*

■ Section 1981 addresses racial discrimination in contractual relationships. It provides in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce con-

tracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). Alexander Graphics argues that Pettis cannot bring a § 1981 claim because he was an employee at-will, without a contract for employment for a specific term. Alexander Graphics relies on *dicta* from *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025 (7th Cir.1998), which stated: "In order to bring a section 1981 claim there must at least be a contract.... Arguably, since [plaintiff] was an employee at-will, and did not have any contractual rights regarding the term of her employment, she cannot claim that she was discriminated against with respect to [the] layoff." *Id.* at 1034–35. The Seventh Circuit made clear in *Gonzalez* that it was not basing its decision on the § 1981 claim on that argument: "However, we need not determine whether [plaintiff's] at-will status provided adequate support for her section 1981 claim because even if we were to allow [plaintiff's] section 1981 claim to stand ... it would fail for the same reasons as her Title VII claim." *Id.* at 1035.

Although this court gives careful consideration to *dicta* from the Seventh Circuit, it also has an obligation to give "most respectful consideration to the decisions of the other courts of appeals and [to] follow them whenever [it] can." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987). The Fifth Circuit addressed this issue a few months ago and held in *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048 (5th Cir.1998), that an at-will employment relationship (under Texas law) is a contract for purposes of § 1981. *Fadeyi* represents a square holding by a United States Court of Appeals. Also, its decision is, in this court's view, in harmony with the relevant decisions of the Supreme Court of the United States and the indisputable legal proposition that there exists a contractual relationship between an employer and employee regardless of whether the relationship is at-will, for a specified term, or is terminable only for good cause.

The Fifth Circuit relied on the fact that the Texas Supreme Court has recognized that an at-will employment relationship is a contract by concluding that an at-will employee could maintain a cause of action for tortious interference with a contract. *Id.* at 1050. Similarly, the Supreme Court of Indiana has held that employment at-will involves a contractual relationship. In *Bochnowski v. Peoples Federal Savings & Loan Ass'n*, 571 N.E.2d 282, 285 (Ind. 1991), the court held that an at-will employee can state a valid cause of action for tortious interference with an employment contract. The court explained that while "a party to an at will contract may have a right to terminate the contract, '[u]ntil he has so terminated it, the contract is valid and subsisting, and the defendant may not improperly interfere with it.'" *Id.* at 284–85, quoting Restatement (Second) of Torts § 766 cmt. g (1979).

In *Fadeyi* the Fifth Circuit also relied on the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which assumed that an at-will employee is entitled to protection under § 1981 (although *Patterson* limited the scope of that protection on grounds effectively overruled by the Civil Rights Act Amendments of 1991). The court in *Fadeyi* also relied on the policy embodied in the amendments to § 1981 in the Civil Rights Act Amendments of 1991. See 160 F.3d at 1050, discussing *Patterson*, 491 U.S. at 185, 109 S.Ct. 2363. The *Fadeyi* court quoted Justice Stevens' separate opinion in *Patterson* which "appears to be the approach embraced by Congress when it overruled *Patterson*" by amending § 1981:

> An at-will employee, such as petitioner, is not merely performing an existing contract; she is constantly remaking that contract.... [W]hether employed at will or for a fixed term, employees typically strive to achieve a more rewarding relationship with their employers. By requiring black employees to work in a hostile environment, the employer has denied them the same opportunity for advancement that is available

to white citizens. A deliberate policy of harassment of black employees who are competing with white citizens is, I submit, manifest discrimination in the making of contracts in the sense in which that concept was interpreted in *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

491 U.S. at 221, 109 S.Ct. 2363, quoted in *Fadeyi*, 160 F.3d at 1050. The *Fadeyi* court concluded that to "hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees...." 160 F.3d at 1050. The court continued:

> None can contest that discriminating against an employee on the basis of race is illegal and against public policy. In amending § 1981, Congress was advancing such public policy concerns by providing a vehicle for every employee to remedy racial discrimination in the workplace. Congress could not have meant to exclude at-will workers from the reach of § 1981, as to do so would be to allow use of the ubiquitous at-will doctrine "as leverage to incite violations of our state and federal laws."

*Id.* at 1052 (citation omitted). These considerations, together with the fact that Indiana law plainly treats employment at-will as a contractual relationship, convince this court that an employee should not be precluded from bringing a cause of action under § 1981 solely because of his at-will status. Accordingly, the court denies Alexander Graphics' motion for summary judgment on Pettis' § 1981 claim.

## II. *Title VII*

■ In analyzing an employment discrimination case, the "central question" is "whether the employer would have taken the same action had the employee been of a different race ... and everything else had remained the same." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir.1996). Pettis claims that Alexander Graphics violated Title VII by singling him out for adverse treatment and by terminating his employment because of his race.

Pettis argues that he has established a prima facie case of race discrimination using the *McDonnell Douglas* indirect proof method. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of discriminatory discharge, Pettis must come forward with evidence to show: (1) he belongs to a protected class (in this case, a racial minority); (2) he was performing his job satisfactorily; (3) he suffered an adverse employment decision; and (4) the employer treated similarly-situated white employees more favorably. *Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir.1997). If Pettis comes forward with evidence supporting these elements, the burden then shifts to Alexander Graphics to articulate a legitimate, non-discriminatory reason for its action. *E.E.O.C. v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149 (7th Cir.1996). If Alexander Graphics states a reason, the burden shifts back to Pettis to come forward with evidence sufficient to raise a genuine issue of fact as to whether defendant honestly believed in the articulated reason. *Id.* The parties contest whether Alexander Graphics treated similarly-situated white employees more favorably and whether Alexander Graphics' articulated, nondiscriminatory reason for firing Pettis is pretextual.

■ Defendant's theory on summary judgment is that Pettis has failed to demonstrate that white employees were involved in similar disputes with their supervisors and were treated more favorably. Defendant argues that Pettis' supervisor, David Jaco, questioned all employees who were late for work, but that Pettis was not similarly situated to other late employees because only Pettis had "engaged in disruptive, insubordinate behavior toward his or her supervisors." Def. Br. at 14. Defendant also argues that Pettis cannot show that its reason for terminating him— that he engaged in "disruptive and insu-

bordinate behavior"—was a pretext because Pettis admitted that he argued with his supervisors, admitted that he used profanity, admitted that his voice was loud, and later apologized for his conduct, and because several witnesses heard his "tirade," and the supervisor who fired him was the same one who hired him.

Pettis argues that he was similarly situated to white employees *until* Jaco "singled out Pettis for a verbal assault that he did not visit on white employees who were late for work." Pl.Br. at 11. Pettis further argues that a reasonable jury could conclude that the events giving rise to Pettis' termination were precipitated by Jaco, and not by Pettis, and that Jaco's "harangue" was motivated by Pettis' race. *Id.* In other words, Pettis argues that a jury could reasonably conclude that, but for Jaco's "verbal attack" on Pettis, Pettis never would have become "insubordinate." *Id.* Pettis also contends that a jury could reasonably conclude that Alexander Graphics' asserted reason for Pettis' termination was a "convenient and plausible excuse for purposes of this litigation," and points to the facts that Jaco did not terminate, or even reprimand Griffith (who is white) for being late, and that "everyone" at Alexander Graphics used vulgar language on a "normal everyday" basis. Pl. Br. at 14. Pettis also contends that even if defendant's general manager McClintic made the formal, final decision to fire Pettis, supervisor Jaco had so much influence over the decision that he is a relevant decisionmaker for purposes of Title VII.

The court has reviewed the parties' evidence and concludes that there is a genuine issue of material fact as to whether defendant would have fired plaintiff if he had been of a different race and everything else had remained the same. While summary judgment "is hardly unknown, or for that matter rare, in employment discrimination cases," courts must be careful "not to grant summary judgment if there is an issue of material fact that is genuinely contestable." *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1396 (7th Cir. 1997) (also describing that case as

"push[ing] against the outer boundaries" of appropriate use of summary judgment). In deciding a motion for summary judgment the court may not, of course, weigh the credibility of conflicting evidence, nor may the court choose between competing but reasonable inferences to be drawn from circumstantial evidence of a person's intentions. Whether Alexander Graphics terminated Pettis because of his race is a question of fact for a jury to decide. The court therefore denies defendant's motion for summary judgment on Pettis' Title VII claim.

### Conclusion

For the reasons set forth above, Pettis' motion to strike portions of defendant's summary judgment brief is GRANTED, and Alexander Graphics' motion for summary judgment is DENIED on both counts. After conferring with counsel in the near future, the court will set new dates for a final pretrial conference and trial.