[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/10/99
THOMAS K. KAHN
CLERK

_____

No. 97-9125

_____

D. C. Docket No. 5:94-CV-467-3-WDO

CHARLES BISHOP,

Plaintiff-Appellee,

versus

JAMES AVERA, Police Chief,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(June 10, 1999)**

Before BARKETT, Circuit Judge, and KRAVITCH and MAGILL*, Senior Circuit
Judges.

_____
* Honorable Frank J. Magill, Senior U.S. Circuit Judge for the Eighth Circuit, sitting
by designation.

BARKETT, Circuit Judge:

James Avera, Police Chief for the city of Macon, Georgia, appeals the denial of his motion for summary judgment on the ground of qualified immunity in a reverse discrimination suit filed by former Deputy Chief Charles Bishop.  Bishop, who is white, sued Avera, the city of Macon, and Mayor Tommy Olmstead under 42 U.S.C. §§ 1981, 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq.("Title VII"), claiming that Avera unlawfully demoted him and replaced him with a less qualified black deputy chief in order to fulfill a campaign promise made by the mayor.  Bishop argues that the demotion constituted unlawful discrimination in violation of his civil rights and the Fourteenth Amendment.

Bishop alleges that he was removed based on race from the position of Deputy Chief in 1992, a position he had held since 1983, as a result of an agreement made between Mayor Tommy Olmstead and City Council member Charles Dudley during Olmstead's campaign for mayor.  According to Bishop, Dudley agreed to support Olmstead for mayor if Olmstead promised to appoint a black Deputy Chief of Police.  Following Olmstead's election, Bishop alleges that Dudley continued to press the mayor, both publicly and privately, for the appointment of a black Deputy Chief.  In May 1994, Dudley declared in an open meeting of the City Council that he would not vote for any further police budget items until the mayor appointed a black Deputy Chief.  In June1994, Avera, a

2

mayoral appointee, relieved Bishop of his position and demoted him to Captain.

Avera's stated reasons for demoting Bishop were disloyalty and incompatible law

enforcement philosophies.  However, Bishop argues that these reasons were

pretextual, offering evidence that in February 1994, Avera wrote a letter of

commendation to Bishop and, in July 1994, following Bishop's demotion, Avera

assessed Bishop's performance as Deputy Chief as "superior."

Following discovery, Avera filed for summary judgment, arguing that

Bishop's claims could not be maintained against him in his individual capacity;

that Bishop had failed to make or support an essential element of his claim and;

that as a government official acting in his discretionary capacity, Avera was

entitled to qualified immunity from all of Bishop's claims.  The district court

summarily denied the motions and this interlocutory appeal followed.  On appeal

Avera raises only the issue of qualified immunity.[1]

To survive a motion for summary judgment on grounds of qualified

immunity, a plaintiff must show that "when the defendant acted, the law

established the contours of a right so clearly that a reasonable official would have

understood his acts were unlawful."  Post v. City of Fort Lauderdale, Fla., 7 F.3d

---

**1** The denial of summary judgment on a qualified immunity claim is immediately appealable to the extent that it involves questions of law, and this court therefore has jurisdiction under 28 U.S.C. § 1291.  See Behrens v. Pelletier, 516 U.S. 299, 311 (1996).

1552, 1557 (11th Cir. 1993); see also Moniz v. City of Fort Lauderdale, Fla., 145

F.3d 1278, 1281-82 (11th Cir. 1998).  If Bishop's account of events is true -- and

for purposes of reviewing a denial of summary judgment, we assume that it is[2] –

then a reasonable jury could find that Avera's stated reasons for Bishop's demotion

and replacement were pretextual and that Bishop was instead demoted because of

his race.  To demote and replace Bishop solely for racial reasons was, at the time of

his demotion, strictly and clearly proscribed by law.  See e.g., Smith v. Lomax, 45

F.3d 402, 407 (11th Cir. 1995) (noting clear state of the law prohibiting racial

discrimination in public employment); Yeldell v. Cooper Green Hospital, Inc., 956

F.2d 1056, 1064 (11th Cir. 1992) (same).  We therefore affirm the district court's

denial of summary judgment on Bishop's § 1983, and Title VII claims.

However, we conclude that the district court erred in denying Avera

qualified immunity on Bishop's § 1981 claim.  Section 1981 guarantees to all

persons in the United States "the same right . . . to make and enforce contracts . . .

as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  In 1991, Congress passed

the Civil Rights Act of 1991, which amended § 1981 in response to the Supreme

Court's decision in Patterson v. McLean Credit Union, 491 U.S. 164 (1989).

---

**2** In reviewing a summary judgment motion predicated on qualified immunity, the court must resolve all factual disputes in favor of the plaintiff. See Johnson v. City of Fort Lauderdale, Fla., 126 F.3d 1372, 1378 (11th Cir. 1997).

Patterson held that § 1981 did not address discriminatory conduct that occurred after the making of the contract which did not interfere with the plaintiff's enforcement of his or her contractual rights. The Civil Rights Act of 1991 amended § 1981 to broaden the definition of "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).[3]

Avera argues that at-will employees do not have contractual relationships with employers and that Bishop, whose Deputy Chief post was an at-will position,[4]

---

[3] Section 1981 now reads as follows:
> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
> (b) For purposes of this section, the term "to make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

[4] The Macon city ordinance states in relevant part:
> (3) . . . Positions above the above stated ranks in the fire and police departments from the approved table of organization shall be filled by the appointment of the mayor on recommendation of the chief of the respective department and *shall serve in that position at the pleasure of the chief and mayor*. If relieved of duty in such appointed position, such employee shall be eligible to return to the same rank or grade held previously without loss of seniority or other benefits.

City Code of Macon, § 15-81(3) (emphasis added).

5

therefore cannot sustain a claim under § 1981.  While there is ample caselaw on both sides of this question,[5] there is no Supreme Court[6] or Eleventh Circuit precedent on point.

Considering the confusion in the law on this issue at the time of Avera's actions, we cannot say that his conduct was clearly unlawful in light of the pre-existing law governing claims under § 1981.  See Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("[I]n light of pre-existing law, the unlawfulness [of the official conduct at issue] must be apparent."); Moniz, 145 F.3d 1282.  We therefore reverse the district court's denial of Avera's motion for summary judgment on this claim.[7]

AFFIRMED in part, REVERSED in part and REMANDED for proceedings consistent herewith.

---

**5** Compare Spriggs v. Diamond Auto Glass, 165 F.3d 1015 (4th Cir. 1999) (finding contractual relationships for at-will employees to be covered by § 1981); Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc., 160 F.3d 1048 (5th Cir. 1998) (same); Faulk v. Home Oil Co., Inc.,  (M.D. Ala. 1999) (same) with Moorer v. Grumman Aerospace Corp., 964 F.Supp. 665 (E.D.N.Y. 1997) (holding that at-will employment does not fall within the scope of § 1981); Moscowitz v. Brown, 850 F.Supp. 1185 (S.D.N.Y. 1994) (same); see also Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1034-35 (7th Cir. 1998) (suggesting, without deciding, that at-will employee cannot sustain claim under § 1981).

**6** The Supreme Court decision in Patterson is arguably on point.  In that case, the Court found that Patterson, who appears to be an at-will employee, fell within § 1981's protection. See Patterson, 491 U.S. at 185.  However, in light of the subsequent division in lower courts, we cannot say that Patterson so clearly established the law as to strip Avera of qualified immunity.

**7** Although we would normally address whether § 1981 has been violated before considering the question of qualified immunity, see County of Sacramento v. Lewis, 118 S.Ct 1708, 1714 n.5 (1998), the matter has not been fully briefed by the parties so we choose instead to leave the question open until it is squarely before us.