# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3498

_____

| | | |
|---|---|---|
| Derrick Dorrell Turner, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Arkansas Insurance Department, | * | |
| | * | Appeal from the United States |
| Defendant, | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Mike Pickens, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 16, 2002
Filed: July 22, 2002

_____

Before BOWMAN, MAGILL, and BYE, Circuit Judges.

_____

MAGILL, Circuit Judge.

Mike Pickens, the Insurance Commissioner for the State of Arkansas, appeals the district court's[1] denial of his motion for summary judgment on qualified immunity grounds. The issue presented on appeal is a narrow one: Whether, for qualified

_____

[1]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

immunity purposes, it was "clearly established" on September 23, 1999, that 42 U.S.C. § 1981 conferred upon an at-will employee the right to be free from discharge based on racial discrimination or in retaliation for exercising his rights. For the reasons set forth below, we conclude that such a right was clearly established as of the date in question and affirm.

## I.

Derrick Dorrell Turner, an African-American, is a former at-will employee of the Arkansas Insurance Commission (the "Commission"). In May of 1999, Turner applied for a promotion to the position of Assistant Manager of Financial Analysis. Much to his dismay, however, Turner was not selected to fill the position. Shortly thereafter, Turner filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 22, 1999, alleging that he was denied a promotion based on his race. About two months later, on September 23, 1999, Pickens terminated Turner. Pickens' proffered reason for terminating Turner was Turner's alleged misrepresentations to the Commission regarding his undergraduate degree. Subsequently, Turner amended his EEOC complaint. In doing so, Turner abandoned his failure to promote claim and sued Pickens in his individual capacity under Title VII and 42 U.S.C. §§1981 and 1983, claiming that he was terminated because of his race and/or in retaliation for filing his initial EEOC claim.

In the district court, Pickens moved for summary judgment arguing that he was entitled to qualified immunity for any claims based on § 1981. In particular, Pickens argued that as of September 23, 1999, the law was not clearly established that an at-will employee could bring a claim under § 1981 for race discrimination or retaliatory discharge. By order entered October 10, 2001, the district court denied Pickens' motion for summary judgment. Pickens timely appealed.

-2-

## II.

Under the collateral order doctrine, a district court's denial of a qualified immunity defense may be immediately appealed. Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999); see also Mitchell v. Forsyth, 472 U.S. 511, 525 (1985). However, because this case comes to us on an interlocutory appeal, our jurisdiction is extremely limited. In fact, the only issue this court has jurisdiction to hear is whether Pickens is entitled to qualified immunity. Mettler, 165 F.3d at 1202 (citing Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir. 1998)). Additionally, we review a district court's denial of summary judgment based on qualified immunity de novo. Vaughn v. Ruoff, 253 F.3d 1124, 1127 (8th Cir. 2001). As noted above, review is limited to issues of law, and this court does not review the merits of the case or the sufficiency of the evidence. Lyles v. City of Barling, 181 F.3d 914, 916-17 (8th Cir. 1999). Finally, whether the law at issue was "clearly established" at the time of the alleged violation is a pure question of law to be reviewed de novo. Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001).

## III.

In reviewing qualified immunity cases, we must (1) determine whether there was a deprivation of a federal constitutional or statutory right and, if so, we must (2) determine whether the right was "clearly established" at the time of the alleged deprivation. County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998). If either question is answered in the negative, the inquiry comes to an end and the public official is entitled to qualified immunity. Vaughn, 253 F.3d at 1128. If both questions are answered in the affirmative, however, a public official may avoid suit only if he meets his burden of establishing undisputed and material facts that demonstrate that his actions were reasonable under the circumstances. Id. If such facts are undisputed, then that is a question of law to be reviewed by a court; if not, then it is a question for a jury and summary judgment is improper. Id. In this case,

Pickens does not dispute that Turner has been deprived of a right, nor does Pickens supply the court with any undisputed and material predicate facts to show that his actions were reasonable under the circumstances, but rather Pickens relies solely on the contention that the law was not "clearly established" at the time of the deprivation. See, e.g., Buckley v. Rogerson, 133 F.3d 1125, 1131 (8th Cir. 1998).

To be "clearly established," the right's contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Hope v. Pelzer, 122 S. Ct. 2508, 2515 (2002). There is no requirement, however, "that the very action in question has previously been held unlawful, but rather, in the light of pre-existing law the unlawfulness must be apparent." Vaughn, 253 F.3d at 1129 (internal quotations and citations omitted); see also Hope, 122 S. Ct. at 2515; id. at 2522 (Thomas, J., dissenting). In making this determination, "we "subscribe to a broad view of the concept of clearly established law, and we look to all available decisional law, including decisions from other courts, federal and state, when there is no binding precedent in this circuit." Id. (internal quotations and citations omitted). That is, even in the complete absence of any decisions involving similar facts, a right can be "clearly established" if a reasonable public official would have known that the conduct complained of was unlawful. Id. (citing Tlamka v. Serrell, 244 F.3d 628, 634-35 (8th Cir. 2001)).

The determinative issue presented on appeal is whether it was "clearly established" prior to September 23, 1999, that an at-will employee could not be fired on the basis of his race or in retaliation for exercising his rights, either constitutional or statutory. Underlying this claim is the basic premise of whether an at-will employee, who can be fired for good cause or no cause at all, can bring an action

under § 1981 for violation of a contractual right.[2]  For the purpose of our review, all case law, Supreme Court and otherwise, must have been "established" prior to September 23, 1999.

**IV.**

Section 1981 guarantees to all persons in the United States "the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a) (1994).  In Patterson v. McLean Credit Union, 491 U.S. 164, 179-80 (1989), the Supreme Court concluded that § 1981 covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process."  Consequently, the Court held that § 1981 did not cover racial harassment by an employer that occurred after the inception of the employment relationship. Id. at 176-77.  In response to Patterson, Congress amended § 1981 through the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071.  In doing so, Congress broadened the scope of the phrase "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b) (1994).  Thus, § 1981 provides protection for violations that occur from the inception until the conclusion of a contractual relationship.  Skinner, 253 F.3d at 339.

In an action brought under § 1981, we are first tasked with determining whether Turner's at-will employment relationship with the Commission was a contractual one under Arkansas law.  Id. at 340.  The Arkansas Supreme Court has

---

[2]Recently, we concluded that at-will employees could maintain actions under § 1981.  Skinner v. Maritz, Inc., 253 F.3d 337, 340 (8th Cir. 2001) ("Each federal court of appeals that has explicitly decided the issue has held, however, that an at-will employee may maintain a claim under § 1981 for racially discriminatory employment practices.") (citing cases).

"repeatedly held that when an employee's <u>contract</u> of employment is for an indefinite term," such an employment relationship is considered at-will. <u>Sterling Drug, Inc. v. Oxford</u>, 743 S.W.2d 380, 383 (Ark. 1988) (citing <u>Griffin v. Erickson</u>, 642 S.W.2d 308 (Ark. 1982)) (emphasis added). Despite the contractual nature of an at-will employment relationship, generally the "right of the employer to terminate the employment is unconditional and absolute." <u>Marine Servs. Unlimited, Inc. v. Rakes</u>, 918 S.W.2d 132, 135 (Ark. 1996) (internal quotations and citations omitted). But whether, under Arkansas law, Turner's termination was proper is not relevant to this case because we look to state law merely to define the nature of the relationship between an at-will employee and his employer. Here, although Turner's employment was at-will, under Arkansas law such an employment relationship is contractual in nature although it is not based on any independent contractual right.

Having made this determination, we now turn to whether it was "clearly established" that an at-will employee could not be fired for illegal reasons without recourse to the protections afforded by § 1981. While we take a broad view of all available decisional law when making the determination whether a principal of law was "clearly established," we necessarily follow a hierarchical framework. First, we must address relevant Supreme Court precedent.

In <u>Patterson</u>, the United States Supreme Court, while rejecting the underlying merits of Patterson's claim, acknowledged that Patterson, an at-will employee, might have a cause of action based on the claims that her employer failed to promote her based on her race. 491 U.S. at 185. In doing so, the Court stated that "the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the <u>new</u> <u>contract</u> is actionable under § 1981." <u>Id.</u> (emphasis added). As the Fifth Circuit has pointed out, "[t]his language leaves no doubt that the Court considered the employee's [at-will] relationship with her employer to be a contractual one" for purposes of

-6-

§ 1981 because it is apparent that "there can be no 'new contract' unless there is first an old <u>contract</u>." <u>Fadeyi v. Planned Parenthood Assoc. of Lubbock, Inc.</u>, 160 F.3d 1048, 1050 (5th Cir. 1998).

Under <u>Patterson</u>, for purposes of § 1981, an employment-at-will relationship is considered a contractual one even though an independent state law contract may not exist. <u>Fadeyi</u>, 160 F.3d at 1051; <u>see also</u> <u>Bishop v. Avera</u>, 177 F.3d 1233, 1236 n.6 (11th Cir. 1999); <u>Spriggs v. Diamond Auto Glass</u>, 165 F.3d 1015, 1020 n.8 (4th Cir. 1999); <u>McKnight v. Gen. Motors Corp.</u>, 908 F.2d 104, 109 (7th Cir. 1990). That is, in <u>Patterson</u> the Court "rejected the notion that § 1981 requires a plaintiff to have an independent contractual right to sue under state law," but rather "[§] 1981only requires that the employee have a 'contract.'" <u>Skinner</u>, 253 F.3d at 341 n.2. Properly read, the <u>Patterson</u> decision presumes that at-will employees have "contractual" rights under § 1981 that are enforceable in court. <u>Cf.</u> <u>Haddle v. Garrison</u>, 525 U.S. 121, 126 (1998) (at-will employee could bring action under 42 U.S.C. § 1985 because "[t]he kind of interference with at-will employment relations alleged here is merely a species of the traditional torts of intentional interference with <u>contractual relations</u>") (emphasis added); <u>see also</u> <u>Estes Assocs., Inc. v. Time Ins. Co.</u>, 980 F.2d 1228, 1232 (8th Cir. 1992).

The foregoing discussion casts serious doubt on Pickens' claim because <u>Patterson</u>, albeit implicitly, appears to hold that an at-will employee may bring a cause of action under § 1981.[3] However, if there is any doubt about whether the

_____

[3]While it is true that Congress superceded <u>Patterson</u> with its passage of the Civil Rights Act of 1991, it does not necessarily follow that Congress intended to completely eliminate all of the analysis put forward in <u>Patterson</u>. In fact, in overruling <u>Patterson</u>, Congress appears to have adopted the approach of Justice Stevens. <u>Fadeyi</u>, 160 F.3d at 1050 (explaining legislative history of the Civil Rights Act of 1991). Writing separately in <u>Patterson</u>, Justice Stevens elaborated on his understanding of the nature of the at-will employment relationship in the context of

district court was correct in denying Pickens' motion for summary judgment on his qualified immunity claims, the decisions of the courts of appeals further support our conclusion.

The first federal appellate court to expressly address the issue of whether § 1981 supports an at-will employee's cause of action was the Fifth Circuit in Fadeyi, which was decided on November 11, 1998, almost a year before Turner's termination. In Fadeyi, the court, relying heavily on Patterson, noted that "[t]o hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees." 160 F.3d at 1050. In the court's view, the "conclusion [was] clear that even though an at-will employee can be fired for good cause, bad cause, or no cause at all, he or she cannot be fired for an illicit cause." Id. at 1051-52.

A few months later, on January 28, 1999, about eight months prior to Turner's termination, the Fourth Circuit addressed the issue in Spriggs. In reaching the same conclusion as the court in Fadeyi, the Fourth Circuit held "that [because] an at-will employment relationship is contractual . . . such relationships may therefore serve as

a § 1981 action:

> An at-will employee, such as petitioner, is not merely performing an existing contract; she is constantly remaking that contract. . . . [W]hether employed at will or for a fixed term, employees typically strive to achieve a more rewarding relationship with their employers. By requiring black employees to work in a hostile environment, the employer has denied them the same opportunity for advancement that is available to white citizens. A deliberate policy of harassment of black employees who are competing with white citizens is, I submit, manifest discrimination in the making of contracts in the sense in which that concept was interpreted in Runyon v. McCrary, [427 U.S. 160 (1976)].

Patterson, 491 U.S. at 221 (Stevens, J., concurring in part and dissenting in part).

predicate contracts for § 1981 claims." Spriggs, 165 F.3d at 1018-19.[4] In so concluding, the court made special mention of the fact that its decision was consistent with the "only Court of Appeals decision to have squarely resolved this issue." Id. at 1019. Thus, prior to September 23, 1999, the only two courts of appeals to address the issue held squarely that Turner's claim was actionable.

Nevertheless, Pickens points to cases from the Seventh and Eleventh Circuits that he argues show that the law was not "clearly established." First, the Seventh Circuit, in dictum, questioned whether "at-will status provide[s] adequate support for [plaintiff's] section 1981 claim." Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1035 (7th Cir. 1998); but see McKnight, 908 F.2d at 109 (noting that "[a] contract for employment at will may end abruptly but it is a real and continuing contract nonetheless"). However, because the plaintiff in Gonzalez did not provide direct evidence of discrimination and could not point to other similarly situated employees who had been treated more favorably, the court did not determine the § 1981 question. 133 F.3d at 1035. Next, the Eleventh Circuit considered but did not decide the question whether an at-will employee could sue under § 1981. Bishop, 177 F.3d at 1236 (holding that conduct complained of was not "clearly unlawful in light of the pre-existing law governing claims under § 1981," as of June 1994). In coming to this conclusion, however, the Eleventh Circuit noted that Patterson was "arguably on point," but chose not to apply the Patterson decision. Id. at 1236 n.6. Pickens argues that although these cases do not directly address the issue before us, they nevertheless cast sufficient doubt over Turner's claims and demonstrate that the law was not "clearly established." We disagree. Although we recognize that these

---

[4]Although the Fourth Circuit recognized that Patterson supported its conclusion, the court chose to not rely on the analysis in Patterson. Spriggs, 165 F.3d at 1020 n.8.

cases support Pickens' position, we reject Pickens' suggestion that such dictum stands on equal footing with settled case law.[5]

When making the determination of whether the law was "clearly established" at the time the alleged violation occurred, we are obligated to include the decisions of the district courts. Tlamka, 244 F.3d at 634. A thorough review of these decisions show that the overwhelming majority of cases reaching the issue concluded that an employee's at-will status did not preclude the maintenance of an action under § 1981. By our count, out of the nineteen published opinions on the issue, see 8th Cir. R. 28A(k), fifteen district courts concluded that at-will employees could sue under § 1981, while only four found such a cause of action impermissible.[6] With respect

_____

[5]This is not to say that we do not take notice of such dictum, but rather that we do think that it is necessary to give it equal precedential effect. To do so, in essence, would give these cases the force and effect of law on certain propositions in the narrow context of determining whether the law was "clearly established" for qualified immunity purposes. In our view, employing such a practice would be at odds with the customary manner in which we treat dictum. Stekloff v. St. John's Mercy Health Sys., 218 F.3d 858, 862 (8th Cir. 2000) ("We note, however, that this passing comment was dictum and does not bind us."); see also RTC Mortgage Trust 1994-N2 v. Haith, 133 F.3d 574, 577 (8th Cir. 1998).

[6]Compare Lane v. Ogden Entm't, 13 F. Supp. 2d 1261, 1272 (M.D. Ala. 1998) (holding that an at-will employee may bring a cause of action under § 1981); Sheppard v. Dickstein, Shapiro, Morin & Oshinshy, 59 F. Supp. 2d 27, 31-32 (D.D.C. 1999) (same); Farrior v. H.J. Russell & Co., 45 F. Supp. 2d 1358, 1364-66 (N.D. Ga. 1999) (same); Jones v. Sabis Educ. Sys., Inc., 52 F. Supp. 2d 868, 875-76 (N.D. Ill. 1999) (same); Riad v. 520 S. Mich. Ave. Assocs. Ltd., 78 F. Supp. 2d 748, 754-57 (N.D. Ill. 1999); Pettis v. Alexander Graphics, Ltd., 52 F. Supp. 2d 950, 951-53 (S.D. Ind. 1999) (same); Baker v. Am. Juice Inc., 870 F. Supp. 878, 883 (N.D. Ind. 1994) (same); Filbern v. Habitat for Humanity, Inc., 57 F. Supp. 2d 833, 835-36 (W.D. Mo. 1999) (same); LaRocca v. Precision Motorcars, Inc., 45 F. Supp. 2d 762, 774-76 (D. Neb. 1999) (same); O'Neal v. Ferguson Constr. Co., 35 F. Supp. 2d 832, 837-38 (D.N.M. 1999) (same); Mass v. McClenahan, 893 F. Supp. 225, 230-31 (S.D.N.Y. 1995) (same); Lazaro v. Good Samaritan Hosp., 54 F. Supp. 2d 180, 184-85 (S.D.N.Y. 1999) (same); Williams v. United Dairy Farmers, 20 F. Supp. 2d 1193,

to these decisions, the balance tips in favor of Turner.

This leads us to the question whether one Supreme Court case, which strongly implies that Turner's position is the correct one, plus two courts of appeals cases and fifteen district court opinions that expressly state that Turner's position is the correct one, is enough to show the law in question was "clearly established." We hold that it does. Determining whether the law is "clearly established" is not a precise science. The determination is, however, a balancing of all available precedential decisional law on point, with the greatest effect given to decisions of the United States Supreme Court. Next, we look within our own circuit, and where there is no law on point we then canvass the other courts of appeals, the district courts, and state courts,[7] giving each decision on point its requisite weight. In our view, the fact that two circuit cases and fifteen district court cases directly support a proposition and the Supreme Court implicitly supports that same position is sufficient to demonstrate that the law was "clearly established" as of September 23, 1999.

## V.

For the reasons stated above, we hold that as of September 23, 1999, it was "clearly established" that at-will employees could sue for employment discrimination

1201-02 (S.D. Ohio 1998) (same); Henry v. Trammell Crow SE, Inc., 34 F. Supp. 2d 629, 633-35 (W.D. Tenn. 1998) (same); Price v. Wis. Servs. Corp., 55 F. Supp. 2d 952, 955-56 (E.D. Wis. 1999) (same); with Biglow v. Albertson's, Inc., 38 F. Supp. 2d 1292, 1299 (D. Kan. 1999) (holding an at-will employee cannot bring a cause of action under § 1981); Jones v. Becker Group of O'Fallon Div., 38 F. Supp. 2d 793, 796-97 (E.D. Mo. 1999) (same); Moorer v. Grumman Aerospace Corp., 964 F. Supp. 665, 675-76 (E.D.N.Y 1997), aff'd, 162 F.3d 1148, 1998 WL 640438 (2d Cir. 1998) (Unpublished Table Decision) (same); Moscowitz v. Brown, 850 F. Supp. 1185, 1192 (S.D.N.Y. 1994) (same).

[7]Neither party has directed us toward, nor have we found any, state decisional law on point.

under § 1981. Therefore, we AFFIRM the district court's denial of summary judgment on the qualified immunity issue and REMAND for further proceedings, consistent with the result we reach today.

BYE, Circuit Judge, dissenting.

The court deduces "clearly established" law from a Supreme Court decision overruled by Congress, four evenly-divided circuit court decisions, and fifteen district court decisions against four. The court's approach (and its nose count) conflict with earlier cases in our circuit, and I can only wonder what the government and municipal lawyers practicing in our circuit will take from this case.

The court's reliance on Patterson v. McLean Credit Union, 491 U.S. 164 (1989), is deeply troubling since the decision was overruled by Congress in the Civil Rights Act of 1991, Pub. L. No. 102-166, § 101, 105 Stat. 1071, 1071-72. I cannot fathom how a decision that is no longer "good" law can be "clearly established" law. The court's reliance on federal appellate authority is equally problematic, since a split of circuit authority (as we have in this case) presents nearly irrefutable evidence the law is *not* clearly established. See McMorrow v. Little, 109 F.3d 432, 435 (8th Cir. 1997); Murphy v. Dowd, 975 F.2d 435, 437 (8th Cir. 1992) (per curiam). Finally, the court calculates a 15-4 split of district court authority favoring its position. To my mind, this nose count demonstrates the law was unsettled, particularly when these decisions reflect a split within our own circuit. Compare, e.g., Filbern v. Habitat for Humanity, Inc., 57 F. Supp. 2d 833, 835-36 (W.D. Mo. 1999) (employees-at-will *may* bring § 1981 claims), with Jones v. Becker Group, 38 F. Supp. 2d 793, 796-97 (E.D. Mo. 1999) (employees-at-will *may not* bring § 1981 claims).

The court's approach has the added vice of conflicting with prior decisions, such as Offet v. Solem, 936 F.2d 363 (8th Cir. 1991), where we debated whether South Dakota's application of a good-time credits law to prisoners constituted a clearly established violation of the Ex Post Facto Clause. Canvassing relevant

authority, we found three circuit court decisions and two district court opinions favoring the prisoner's approach. But we also identified a single opinion from the California Supreme Court disagreeing with the array of federal authority. This underwhelming split of authority led our court to conclude the law was *not* clearly established. Id. at 366-67. The court does not even attempt to reconcile its approach with Offet, and I am similarly unable to square them.

I cannot agree with the court that the array of divergent authority it has uncovered yields "clearly established" law. I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.