United States Court of Appeals,

Eleventh Circuit.

No. 97-5347.

Michael MONIZ, Plaintiff-Appellee,

v.

CITY OF FORT LAUDERDALE, a Florida municipal corporation, Defendant,

Joseph Donisi, Thomas McCarthy, Bruce Roberts, both in their official capacities as Acting Chief of Police and in their individual capacities, Defendants-Appellants.

July 9, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 96-6405-Civ-DMM), Donald M. Middlebrooks, Judge.

Before EDMONDSON and BARKETT, Circuit Judges, and ALARCÓN[*], Senior Circuit Judge.

BARKETT, Circuit Judge:

Joseph Donisi, Thomas McCarthy, and Bruce Roberts (collectively "appellants"), all current or former employees of the City of Ft. Lauderdale Police Department (the "Department"), appeal from the denial of their motion for summary judgment based on qualified immunity in a reverse discrimination suit filed against them by Ft. Lauderdale police officer Michael Moniz. Moniz is a white male police officer with the Department. Donisi, McCarthy, and Roberts each served as Acting Police Chief at various points during the relevant time period for purposes of this case.

Moniz's complaint derives from the Department's failure to promote him from the rank of patrol officer to sergeant, despite his eligibility for promotion pursuant to the Department's "rule of five scores" policy, at various points during the time period from January 1992 through January

---

[*]Honorable Arthur L. Alarcón, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

1996.[1] During this period, Moniz was among the top five scoring candidates on the Department's eligibility list on nine occasions when the City elected to fill a promotional vacancy. On each of those occasions, however, exercising his discretion to select the best qualified candidate among those officers with the top five scores, the Acting Police Chief at the time selected a candidate other than Moniz. Three of the candidates selected for promotion were African-American; the six remaining candidates who were promoted while Moniz was included on the certified list were white. Moniz contends that Acting Police Chief Donisi informed him that in filling two of the promotional vacancies he had selected African-American officers from the list of candidates with the top five scores in order to increase the number of African-American sergeants.[2] Moniz subsequently filed

---

[1]Pursuant to a collective bargaining agreement between the City of Ft. Lauderdale and the Fraternal Order of Police, Lodge No. 31, eligibility for promotion to the rank of sergeant is limited to those candidates who attain one of the top five scores on the Department's eligibility list—the "rule of five scores." In order to be ranked on the eligibility list, officers must achieve a minimum passing score of 70% on a competitive oral and written examination. Candidates who achieve the minimum score can then have their scores increased based on such factors as residency, past service credits, academic credits, and veterans' preference points. Following these adjustments, candidates are ranked according to their adjusted examination scores.

Upon the creation of a promotional vacancy which the City elects to fill, the City's personnel director certifies a list of the candidates with the top five scores on the eligibility list and passes this certified list on to the Police Chief. The Police Chief then exercises near complete discretion in recommending the best qualified candidate from the certified list, irrespective of numerical score, to the City Manager for promotion. Those candidates on the certified list who are not promoted remain eligible for future vacancies until the list expires, at which point all candidates are re-tested so that a new eligibility list may be compiled. A new eligibility list is compiled every two years.

[2]The parties appear to agree that the sole record evidence of discriminatory intent consists of Moniz's unsworn declaration asserting that Donisi told Moniz that he had promoted two of the top five scoring African-American candidates because he wanted to increase the number of African-American sergeants. This statement, considered in light of the Department's multi-tiered selection process, shows that Donisi took race into account in choosing the best qualified candidate for each promotion. It does not, however, indicate that Donisi selected candidates for promotion based on race to the exclusion of all other factors. Thus, we are not confronted with,

2

suit against the City of Ft. Lauderdale and against Donisi, McCarthy, and Roberts, in both their individual and official capacities, alleging violations of Title VII, the Florida Civil Rights Act, and 42 U.S.C. §§ 1983 and 1985(3). Only the three counts of Moniz's complaint asserting a § 1983 claim are relevant for purposes of this appeal. In those counts, Moniz alleged that appellants were responsible for promoting the three African-American officers, and that the race-based decisions to promote the African-American officers instead of Moniz violated Moniz's right to equal protection under the Fourteenth Amendment. Appellants in their individual capacities asserted the affirmative defense of qualified immunity and subsequently moved for summary judgment on that basis. The district court summarily denied appellants' motion, stating only that:

> The Defendants assert[ ] various reasons as to why Summary Judgment should be entered in [their] favor and that there exists no genuine issue of material fact.
>
> Without elaborating specifically, the Court finds that there exist genuine issues of material fact which preclude the entry of Judgment as a matter of law.

Finding that appellants in their individual capacities are clearly entitled to summary judgment on their claims of qualified immunity, we reverse.

DISCUSSION

As an initial matter, we find no merit to Moniz's jurisdictional challenge to this appeal. Moniz argues that the district court's order denying summary judgment on qualified immunity grounds is not appealable interlocutorily under *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), because the district court's sole reason for denying summary judgment was the existence of genuine issues of material fact. It is true that the denial of qualified immunity at the

---

and need not here address, the question whether appellants would be entitled to qualified immunity had they decided to promote the African-American candidates *solely* on account of race.

3

summary judgment stage is not appealable interlocutorily when the appeal involves only a challenge to the district court's determination that material facts identified in the district court's order are genuinely in dispute. Such a challenge must await final disposition of the case. *See Crawford-El v. Britton,* --- U.S. ----, ----, 118 S.Ct. 1584, 1595, 140 L.Ed.2d 759 (1998) (remarking that the Court has "rejected the argument that the policies behind the immunity defense justify interlocutory appeals on questions of evidentiary sufficiency"); *Johnson,* 515 U.S. at 307-08, 115 S.Ct. 2151 (denial of summary judgment on qualified immunity grounds not immediately appealable where defendants' sole claim on appeal was that the record contained no evidence that defendants had participated in or been present during plaintiff's beating).

However, where, as here, the appeal is based on an assertion that, even on the plaintiff's version of the facts, the defendants are entitled to qualified immunity as a matter of law, we have jurisdiction to review the denial of summary judgment interlocutorily. *See Behrens v. Pelletier,* 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). The mere fact that the district court simply asserted that it based the denial of summary judgment on the existence of genuine issues of material fact does not render the summary judgment order automatically unappealable. *Id.* at 312-13, 116 S.Ct. 834. Rather, such a denial remains immediately appealable to the extent that it turns on "an "abstract issu[e] of law' relating to qualified immunity—typically, the issue whether the federal right allegedly infringed was "clearly established.' " *See id.* at 313, 116 S.Ct. 834 (internal citations omitted); *Mitchell v. Forsyth,* 472 U.S. 511, 524-30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). This is so notwithstanding the district court's failure to identify the factual basis for its legal determination. *See Behrens,* 516 U.S. at 313, 116 S.Ct. 834. As *Johnson* recognizes, where the district court has not set forth the facts on which the denial of summary judgment is based, "[the]

4

court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed" in order to determine whether, on that set of facts, a violation of clearly established law occurred. *Johnson,* 515 U.S. at 319, 115 S.Ct. 2151; *see also Behrens,* 516 U.S. at 313, 116 S.Ct. 834.

In this case, notwithstanding that the district court's order recites that "there exist genuine issues of material fact which preclude the entry of Judgment as a matter of law," we have jurisdiction because the issue presented on appeal is the purely legal question whether, even on the facts construed in the light most favorable to Moniz, appellants are entitled to qualified immunity as a matter of law.[3] More specifically, the question on appeal is whether appellants should reasonably have known, based on prior clearly established law, that their consideration of race as a factor in selecting officers for promotion among the top five scoring candidates on the

[3]Appellants also raise a jurisdictional issue on appeal, arguing that Moniz lacks standing under Article III of the Constitution to challenge appellants' promotion decisions in federal court because he cannot show any "injury in fact." Although the district court's rejection of appellants' qualified immunity defense "is a final decision under the collateral order doctrine over which this Court has jurisdiction pursuant to 28 U.S.C. § 1291," *Harris v. Board of Educ. of the City of Atlanta,* 105 F.3d 591, 594 (11th Cir.1997), the question of Moniz's standing to challenge appellants' promotion decisions is not, *see Crymes v. DeKalb County, Ga.,* 923 F.2d 1482, 1484 (11th Cir.1991) (observing that "the district court's denial of appellants' motion to dismiss the complaint on ripeness grounds ... is not in itself an immediately appealable order"). In *Swint v. Chambers County Comm'n,* 514 U.S. 35, 50-51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), the Supreme Court left open the possibility that it might "be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves independently appealable" when, for example, the issues involved are "inextricably intertwined," or when review of the related ruling is "necessary to ensure meaningful review of the [issue over which the court has jurisdiction]." *See also Vista Community Servs. v. Dean,* 107 F.3d 840, 843 n. 4 (11th Cir.1997). Because we may resolve the qualified immunity issue in this case without reaching the merits of appellants' challenge to Moniz's standing, however, we conclude that the latter issue does not come under either of these categories and thus does not fall within our pendent appellate jurisdiction under *Swint.*

5

Department's eligibility list violated Moniz's right to equal protection.[4] As the Supreme Court has explained, to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ..., but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal citation omitted).

We conclude that appellants could not have been on notice that the promotion decisions for which Moniz holds them responsible[5] would violate his rights under clearly established law. To the contrary, a reasonable government official in appellants' position could have believed that the actions alleged in Moniz's complaint were entirely consistent with clearly established law.

Since 1980, the City of Ft. Lauderdale has been operating pursuant to a consent decree that was entered in *United States v. City of Fort Lauderdale,* S.D. Fla. Case No. 80-6289-CIV-AHL. The consent decree requires the City to adopt the goal of selecting African-American and women candidates for promotion in the police and fire departments in proportion to their representation in the pool of those individuals who have successfully passed the applicable promotional examination.

---

[4]In analyzing a defense of qualified immunity, we first consider whether "the defendant government official [has proven] that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." *Evans v. Hightower,* 117 F.3d 1318, 1320 (11th Cir.1997). If the defendant has met this burden, "the plaintiff must then demonstrate that the defendant violated clearly established law based upon objective standards." *Id.* Because it is undisputed that appellants were acting within the scope of their discretionary authority, we consider only the second part of the qualified immunity analysis here.

[5]In construing the facts in the light most favorable to Moniz, we have assumed, without examining or deciding, that each appellant was in a position to deny his promotion.

6

Specifically, the consent decree includes the following provisions concerning the promotion of African-American and female police officers and fire-fighters:

> The City shall adopt and seek to achieve the goal of promoting blacks and women in the police and fire departments in proportion to their representation in the pool of those individuals who have successfully passed the applicable promotional examination if one is required by the City. However, if the proportion of blacks or women passing any such examination is less than 80% of the proportion of whites or men passing that examination, or, if no promotional examination is required, then blacks and women shall be promoted in proportion to their numbers among the eligible applicants who have taken that examination. The City's compliance with the requirements of this paragraph shall be measured by its compliance with these promotional goals averaged over two year periods, beginning with the entry of this Consent Decree, or upon motion by any party for dissolution of this Consent Decree.

> In no event shall the City be required to hire or promote any person who is not qualified, or to displace any incumbent employee, or to hire or promote any unneeded employees, in order to meet a goal set out in this Decree.

The City has also been operating pursuant to a federally mandated affirmative action plan since 1980.[6] Thus, accepting as true Moniz's assertion that appellant Donisi informed him that he had recommended two of the top five scoring African-American candidates for promotion in order to increase the number of African-American sergeants, a justification consistent with the promotional goal articulated in the consent decree, appellants are entitled to qualified immunity unless Moniz can demonstrate that appellants should have known, based on clearly established law as of 1993 and 1995, the years in which the challenged promotions were awarded, that their use of race as a factor in making promotions consistent with the consent decree was unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. This Moniz cannot do.

---

[6]Although appellants stated at oral argument that the City was required to adopt the above-referenced affirmative action plan pursuant to the Consent Decree, the details of the plan are unavailable as it was not included in the record on appeal.

7

It is undisputed that both the consent decree and the affirmative action plan remain in effect to date. Moreover, there is no suggestion in the record that the constitutionality of the consent decree has been ever been challenged in court, and Moniz raises no such challenge in his complaint. We are aware of no legal authority—and Moniz points to none—that would have put appellants on notice that their consideration of race as a factor in making promotion decisions consistent with a consent decree the validity of which remained unchallenged would violate Moniz's equal protection rights. To the contrary, as recently as 1991, this court upheld the grant of summary judgment on qualified immunity grounds to various individual members of a City Personnel Board, who had been named as defendants in a reverse discrimination suit based on their role in recommending women and minority candidates for promotion from deputy sheriff to sergeant pursuant to a court-approved consent decree. *See Wilson v. Bailey,* 934 F.2d 301, 304 n. 1 (11th Cir.1991). In affirming the district court's qualified immunity ruling, the court remarked only that "[i]t is undisputed that the Personnel Board members acted pursuant to a consent decree approved by a district judge. Thus, summary judgment was warranted." *Id.*

In light of the foregoing, we cannot say that a reasonable government official in appellants' position should have known that the use of race as a factor in selecting candidates for promotion in the manner that the challenged promotion decisions were made in this case would be unconstitutional. We conclude, therefore, that, having violated no clearly established law, appellants are entitled to qualified immunity as a matter of law. Accordingly, we reverse the order of the district court denying appellants' motion for summary judgment on qualified immunity grounds and remand for further proceedings consistent herewith.

REVERSED and REMANDED.

8