Vickey Horton TAPLEY, Plaintiff-Appellee,

v.

Darrell COLLINS, William Torrance, Ronnie Dixon, and The City of Vidalia, Georgia, Defendants-Appellants.

No. 99-10813.

United States Court of Appeals,

Eleventh Circuit.

May 5, 2000.

Appeal from the United States District Court for the Southern District of Georgia.(No. 98-00038-CV-6), B. Avant Edenfield, Judge.

Before CARNES, BARKETT and MARCUS, Circuit Judges.

CARNES, Circuit Judge:

Vickey Tapley filed a lawsuit in federal district court against the City of Vidalia, and city officials Darrell Collins, William Torrance, and Ronnie Dixon contending that they had violated various state and federal rights of hers, including her rights under the Federal Electronics Communications Privacy Act, 18 U.S.C. §§ 2510-2522 ("the Federal Wiretap Act"). Tapley, a Georgia Bureau of Investigation ("GBI") agent, alleged that Collins, the Chief of Police, listened to her private cordless telephone conversations without her consent or knowledge, and together with Torrance, the City Manager, relayed the content of those conversations to Dixon, the Mayor, and to Greg Owens, Tapley's GBI supervisor.[1]

Collins, Torrance, and Dixon moved for summary judgment on the Federal Wiretap Act claims on qualified immunity grounds.[2] The district court denied their motion for summary judgment, holding that

---

[1]Tapley filed a separate lawsuit against Owens, and he is not a party to this appeal or to the lawsuit from which it stems.

[2]The complaint is utterly silent on whether the individual defendants are sued in their individual capacities, but from the beginning the parties and the district court have treated this case as though they are. Otherwise, the qualified immunity contentions, arguments, and rulings, as well as this appeal, have no basis. *See Hill v. Dekalb Reg'l Youth Detention Ctr.,* 40 F.3d 1176, 1184 n. 16 (11th Cir.1994) ("It is well-settled that qualified immunity only protects public officials from lawsuits brought against them in their individual capacity.")(internal quotation marks and citations omitted). Under these circumstances, we will treat the case

qualified immunity is not a defense to Federal Wiretap Act claims. Because of that holding, the district court did not decide whether they would be entitled to qualified immunity if it is an available defense to such claims. Those three individual defendants appeal the denial of summary judgment, arguing that the district court erred in determining that the defense of qualified immunity is not available to public officials faced with Federal Wiretap Act claims.[3] For the reasons that follow, we agree with the defendants, reverse the district court's holding that qualified immunity is inapplicable to such claims, and remand for that court to determine whether these individual defendants are entitled to summary judgment on the basis of qualified immunity.

## I. BACKGROUND

### A. Facts[4]

During the evening of November 3, 1997, Darrell Collins, the Chief of Police for the City of Vidalia, was at home listening to his personal scanner, a device which intercepts radio transmissions on several bands of frequency. Collins heard his name come over the scanner, so he pushed a key to lock in the frequency. He soon realized he had intercepted a telephone conversation between Vickey Tapley, a GBI agent who lived down the street from him, and her former GBI supervisor. That evening Collins listened to Tapley's conversations in three different telephone calls, and he made typed notes of what he heard in all three.

---

as one in which the individual defendants are being sued in their individual capacities. *See Jackson v. Georgia Dep't of Transp.,* 16 F.3d 1573, 1575 (11th Cir.1994) ("When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed.").

[3]The City of Vidalia also attempts to appeal the district court's denial of its motion for summary judgment, which was based on the City's contention that a municipality cannot be held civilly liable for violations of the Federal Wiretap Act by its officials. We lack jurisdiction to interlocutorily review any ruling relating to the City of Vidalia. *See Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 1206, 131 L.Ed.2d 60 (1995) ("[N]or is there 'pendent party' appellate authority to take up the commission's case."); *Pickens v. Hollowell,* 59 F.3d 1203, 1208 (11th Cir.1995) ("[W]e have no pendent party appellate jurisdiction."). Accordingly, we will dismiss the City's appeal.

[4]"In considering the denial of a defendant's summary judgment motion, we are required to view the facts, which are drawn from the pleadings, affidavits, and depositions, in the light most favorable to the plaintiff[ ]." *Swint v. City of Wadley,* 51 F.3d 988, 992 (11th Cir.1995).

2

Later that evening, Chief Collins telephoned his supervisor, City Manager William Torrance, and told him about intercepting the conversations and some of what had been said during them. The next morning, Collins and Torrance met to discuss the intercepted conversations. Together, they called Greg Owen, Tapley's GBI supervisor at the time, to tell him the nature of these conversations. In response, Owen went to City Hall and met with Collins, Torrence and Mayor Ronnie Dixon. During their meeting, Collins and Torrance both told Owen and Dixon details of Tapley's telephone conversations which Collins had intercepted. Upon hearing the nature of the conversations, Owen asked for and was given a copy of the typed notes Collins had made of the conversations. Soon after, Owen confronted Tapley about those telephone conversations, and he reassigned her to a different territory so that she no longer had responsibility for the City of Vidalia.

### B. Procedural History

After learning that her telephone conversations had been intercepted and discussed, Tapley filed suit in federal district court against Collins, Torrance, Dixon and the City of Vidalia, Georgia. Her complaint contained claims alleging: (1) violation of the Federal Wiretap Act; (2) violation of O.C.G.A. § 16-11-62, the "Georgia Wiretap Act;"[5] (3) invasion of privacy; (4) intentional infliction of emotional harm; and (5) violation of her civil rights under color of state law (42 U.S.C. § 1983). Tapley and the defendants filed cross motions for summary judgment on liability. In their motions, the individual defendants asserted qualified immunity as a defense to the Federal Wiretap claim and the § 1983 claim.

The district court granted summary judgment to Tapley against all of the defendants as to liability under the Georgia Wiretap Act and the Federal Wiretap Act claims. In the process, the court denied the individual defendants' motion for summary judgment based upon the defense of qualified immunity, concluding that defense was unavailable to a claim under the Federal Wiretap Act. The court also denied the

---

[5]Although Tapley's complaint did not mention the Georgia Wiretap Act, the district court interpreted it as containing a claim under that act.

defendants' motion for summary judgment on Tapley's state law claim of intentional infliction of emotional distress. It deferred a ruling on the summary judgment motions insofar as the § 1983 claim was concerned.

After the defendants moved for reconsideration, the district court entered an order granting summary judgment to the defendants on the basis of qualified immunity on the § 1983 claim. The district court's other rulings, including the one that qualified immunity is not available as a defense to Federal Wiretap Act claims, stood.

## II. DISCUSSION

The Federal Wiretap Act provides that a person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" is subject to criminal sanctions and civil liability. 18 U.S.C. § 2511(1)(a). The Act also subjects to civil and criminal liability anyone who discloses the contents of an illegally intercepted communication, *see* 18 U.S.C. § 2511(1)(c), or uses the contents of a intercepted communication, knowing or having reason to know that it was illegally obtained, *see* 18 U.S.C. § 2511(1)(d).[6] The Act explicitly

---

[6]The Federal Wiretap Act provides in relevant part as follows:

> (1) Except as otherwise specifically provided in this chapter any person who—
>
> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication;
>
> (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication ...
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> ...

4

provides a complete defense to any civil or criminal action brought under the statute where the defendant relied in good faith upon certain authorities enumerated in the statute. *See* 18 U.S.C. § 2520(d).[7]

The existence of that good faith defense in the statute is the main reason the district court concluded that qualified immunity was unavailable to defendants sued for violating the Federal Wiretap Act. The district court's factual premise about the Act is certainly correct—the Act does contain an explicit, specific defense of good faith—but we disagree with the court's legal premise, which is that existence of a good faith defense in a statute rules out the defense of qualified immunity.

Qualified immunity is an immunity from suit that extends to government officials performing discretionary functions. *See Harlow v. Fitzgerald,* 457 U.S. 800, 817-18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Under this common-law defense, public officials sued in their individual capacities are entitled to qualified immunity when their actions do not violate "clearly established *statutory* or constitutional rights." *Id.,* at 818, 102 S.Ct. at 2738 (emphasis added); *Davis v. Scherer,* 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012,

---

> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1).

[7]That part of the Act states:

> (d) Defense.—A good faith reliance on—
>
> (1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization;
>
> (2) a request of an investigative or law enforcement officer under section 2518(7) of this title; or
>
> (3) a good faith determination that section 2511(3) of this title permitted the conduct complained of;
>
> is a complete defense against any civil or criminal action brought under this chapter or any other law.

18 U.S.C. § 2520(d).

5

3019 n. 12, 82 L.Ed.2d 139 (1984) ("[O]fficials sued for violations of rights conferred by a statute or regulation, like officials sued for violation of constitutional rights, do not forfeit their immunity by violating some other statute or regulation.").

The Supreme Court has placed few restrictions on the availability of the qualified immunity defense. *See, e.g., Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (explaining that the qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law"). Of course, Congress creates and controls statutory causes of action and has the power to abrogate defenses, including the common law defense of qualified immunity, if it wishes to do so. But the Supreme Court has said that the defense of qualified immunity is so well established, that if Congress wishes to abrogate it, Congress should specifically say so. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993) ("Certain immunities were so well established in 1871, when § 1983 was enacted, that we presume that Congress would have specifically so provided had it wished to abolish them.") (citations and internal quotation marks omitted); *Owen v. City of Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980) ("Congress would have specifically so provided had it wished to abolish the doctrine." (quoting *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967))).

In *Gonzalez v. Lee County Hous. Auth.,* 161 F.3d 1290 (11th Cir.1998), we decided whether Congress had abrogated the qualified immunity defense in the Fair Housing Act. That act, like the Federal Wiretap Act, contains an explicit good faith defense.[8] That similarity between the acts makes our *Gonzalez* decision particularly instructive on this issue.

---

[8]The Fair Housing Act provides: "A person shall not be held personally liable for monetary damages for a violation of this chapter if such person reasonably *relied, in good faith,* on the application of the exemption under this subsection relating to housing for older persons." 42 U.S.C. § 3607(b)(5)(A) (emphasis added).

In *Gonzalez* the plaintiff argued that the existence of the good faith defenses in the Fair Housing Act meant that Congress intended to abrogate the defense of qualified immunity to claims under that act. We unequivocally rejected that argument and held that qualified immunity is a defense to the Fair Housing Act, despite the inclusion of a good faith statutory defense. We said that "[n]either the text nor the legislative history of section 3617 [of the Fair Housing Act] indicates that Congress intended to abrogate the qualified immunity to which executive branch officials were entitled under common law." *Id.* at 1299. We explained that our conclusion to that effect was consistent with decisions of our Court and other courts holding that public officials are entitled to qualified immunity when sued under a federal statute. *See id.* at 1300 & n. 34. We cited eleven federal appeals court decisions holding that qualified immunity is available as a defense to claims arising under eight different federal statutes.[9] *Gonzalez* forecloses Tapley's contention, and the district court's holding, that the existence of an explicit good faith defense in a federal statute rules out the defense of qualified immunity.

Tapley also argues that the statutory good faith defense and qualified immunity are equivalent, so permitting both defenses is redundant. We doubt that Tapley believes that, because if it were true, whether the defense of qualified immunity is available would not matter to her claim, and she would not have

---

[9]Those decisions we cited in *Gonzalez, id.* at 1300 n. 34, were *Lussier v. Dugger,* 904 F.2d 661, 663-64, 670 n. 10 (11th Cir.1990) (the Rehabilitation Act of 1973); *Cullinan v. Abramson,* 128 F.3d 301, 307-12 (6th Cir.1997) (the Racketeer Influenced and Corrupt Organizations Act), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1560, 140 L.Ed.2d 792 (1998); *Torcasio v. Murray,* 57 F.3d 1340, 1343 (4th Cir.1995) (the Americans with Disabilities Act and the Rehabilitation Act of 1973); *Lue v. Moore,* 43 F.3d 1203, 1205 (8th Cir.1994) (the Rehabilitation Act of 1973); *McGregor v. Louisiana State Univ. Bd. of Supervisors,* 3 F.3d 850, 862 & n. 19 (5th Cir.1993) (the Rehabilitation Act of 1973); *Cronen v. Texas Dep't of Human Servs.,* 977 F.2d 934, 939-40 (5th Cir.1992) (Food Stamp Act of 1977); *Doe v. Attorney General,* 941 F.2d 780, 797-99 (9th Cir.1991) (the Rehabilitation Act of 1973); *Christopher P. by Norma P. v. Marcus,* 915 F.2d 794, 798-801 (2d Cir.1990) (the Education for All Handicapped Children Act of 1975); *P.C. v. McLaughlin,* 913 F.2d 1033, 1040-42 (2d Cir.1990) (the Education for All Handicapped Children Act of 1975 and the Rehabilitation Act of 1973); *Affiliated Capital Corp. v. City of Houston,* 735 F.2d 1555, 1569-70 (5th Cir.1984) (the Sherman Antitrust Act); *National Black Police Ass'n, Inc. v. Velde,* 712 F.2d 569, 574-80 (D.C.Cir.1983) (Title VI of the Civil Rights Act of 1964 and the Crime Control Act of 1973). We also cited in *Gonzalez* as contrary authority *Samuel v. Holmes,* 138 F.3d 173, 178 (5th Cir.1998) (holding that qualified immunity is not an available defense in retaliation claims brought under the False Claims Act).

7

attempted to convince the district court and tried to convince us that it is unavailable. In any event, qualified immunity and the good faith defense in the Federal Wiretap Act are not equivalent defenses. The two are different in several important respects.

Qualified immunity is an objective test, *see Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), while good faith defenses are subjective in nature, *see Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737. Qualified immunity is as a question of law for the judge, while good faith generally is a jury question. *See id.* at 816-18, 102 S.Ct. at 2737-38. Because it is a question of law for the judge, a qualified immunity defense more often can be, and generally should be, decided earlier in the litigation than a good faith defense. *See Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) ("[B]ecause the entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (internal marks and citations omitted); *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (Qualified immunity is determined at the earliest point in the litigation "to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."). Finally, a denial of qualified immunity is interlocutorily appealable, *see Behrens v. Pelletier,* 516 U.S. 299, 307, 116 S.Ct. 834, 839, 133 L.Ed.2d 773 (1996), while a denial of a good faith defense is appealable only after there has been a final judgment in the case, *see* 28 U.S.C. § 1291; *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949).

Only two circuits have directly addressed the issue of whether qualified immunity is a defense to a suit brought under the Federal Wiretap Act. They reached opposite conclusions. In *Berry v. Funk,* 146 F.3d 1003 (D.C.Cir.1998), the D.C. Circuit held that qualified immunity is not a Federal Wiretap Act defense, reasoning, as the district court in this case did, that because Congress had already set forth a statutory good faith defense "it is hardly open to the federal court to graft common law defenses on top of those Congress creates." *Id.* at 1013.

8

One year after *Berry* was decided, the Sixth Circuit in *Blake v. Wright,* 179 F.3d 1003 (6th Cir.1999), disagreed with the D.C. Circuit's decision and held that qualified immunity is a defense to violations of the Federal Wiretap Act. The Sixth Circuit reasoned that by adopting qualified immunity as a defense for public officials but not private citizens, courts had determined that public officials were to receive more protection from statutory claims than ordinary citizens. *See id.* at 1012. The reason for that extra protection is to avoid "the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737. It follows that courts should not infer that Congress meant to abolish in the Federal Wiretap Act that extra layer of protection qualified immunity provides for public officials simply because it included an extra statutory defense available to everyone. *See Berry,* 146 F.3d at 1012. As the Sixth Circuit also explained: "We fail to see the logic of providing a defense of qualified immunity to protect public officials from personal liability when they violate constitutional rights that are not clearly established and deny them qualified immunity when they violate statutory rights that similarly are not clearly established." *Id.* at 1013. Neither do we.

Finally, the Sixth Circuit made this point for which we have heard no persuasive answer: "We would not strip a judge or prosecutor of absolute immunity because the claim related to a statutory violation and the statute provided an affirmative defense. By the same token, police officers and public officials performing governmental functions should not lose their qualified immunity because of an affirmative defense which might or might not protect them but would, in all events, require they be subject to extended litigation and deprive them of the benefits of qualified immunity." *Id.* at 1012.

We agree with the Sixth Circuit's holding and reasoning in *Blake* and disagree with the D.C. Circuit's *Berry* decision. As the Supreme Court has explained, the qualified immunity defense is so well-rooted in our jurisprudence that only a specific and unequivocal statement of Congress can abolish the defense. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993) ("Certain

9

immunities were so well established in 1871, when § 1983 was enacted, that we presume that Congress would have specifically so provided had it wished to abolish them.") (citations and internal quotation marks omitted); *Owen v. City of Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980) (quoting *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967)) (" 'Congress would have specifically so provided had it wished to abolish the doctrine.' "). The Federal Wiretap Act lacks the specific, unequivocal language necessary to abrogate the qualified immunity defense. Any contrary conclusion would be inconsistent with our *Gonzalez* decision, which we are bound to follow.

Because the defense of qualified immunity is available to public officials who are sued under the Federal Wiretap Act, the district court erred in ruling it out in this case. On remand, the court should apply qualified immunity principles to the law and evidence applicable to this case and decide whether the individual defendants are entitled to summary judgment on qualified immunity grounds insofar as the Federal Wiretap Act claim against them in their individual capacities is concerned. We remand the case to the district court for that purpose.[10]

### III. CONCLUSION

The denial of summary judgment to the individual defendants is REVERSED AND REMANDED for further proceedings consistent with this opinion.

The appeal of the City of Vidalia is DISMISSED for lack of jurisdiction.

---

[10]We have pendent appellate jurisdiction to decide some subsidiary issues concerning whether the defendants' alleged actions violated the Federal Wiretap Act at all, because those issues are inextricably intertwined with the qualified immunity issues which we have interlocutory jurisdiction to review. *See Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995); *Moniz v. City of Fort Lauderdale,* 145 F.3d 1278, 1281 n. 3 (11th Cir.1998). An example is the issue of whether interception of a conversation being transmitted by a cordless phone of the nature allegedly used in this case, lacking as it did certain privacy features, violates the Federal Wiretap Act. But those issues have been poorly briefed, if at all, by the parties, and we exercise our discretion to decline to decide them now. *See Belcher v. City of Foley,* 30 F.3d 1390, 1401 (11th Cir.1994)("We decline to exercise our discretion to review the remaining claims under pendent appellate jurisdiction.") We imply no view on any issue concerning whether the alleged conduct of the defendants violated the Federal Wiretap Act. For now, we decide only that the district court erred in holding that qualified immunity was not an available defense at all to Federal Wiretap Act claims.

BARKETT, Circuit Judge, specially concurring:

I concur because I believe this result is dictated by this Court's decision in *Gonzalez v. Lee County Hous. Auth.,* 161 F.3d 1290 (11th Cir.1998).