[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14641

_____

D.C. Docket No. 1:16-cv-02963-AT

EMANUEL M. FULLER,

Plaintiff - Appellee,

versus

METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY,
ADAM C. MCWILLIAMS,
individually,
ELONTAVIUS T. WHITE,
individually,

Defendants - Appellants,

WANDA Y. DUNHAM,
in her official capacity as Chief of Police for the MARTA Police Department,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 22, 2020)

Before WILSON, LAGOA, and ANDERSON, Circuit Judges.

WILSON, Circuit Judge:

The appellants—Sergeant Adam McWilliams, Officer Elontavious White, and their employer, the Metropolitan Atlanta Rapid Transit Authority (MARTA)—appeal the district court's denial of their motion for summary judgment based on qualified and official immunity. Emanuel Fuller, the appellee, argues that we lack jurisdiction to hear this case because, rather than making arguments of law, the appellants are merely contesting facts. After careful review and with the benefit of oral argument, we agree with Fuller and dismiss this appeal for want of jurisdiction.

## BACKGROUND[1]

In August 2015, Fuller entered a MARTA station with two companions. McWilliams saw Fuller enter the paid area and believed Fuller had done so without paying fare. So he approached Fuller and, after asking a few questions, asked Fuller to step away from his companions.

Surveillance video shows that McWilliams directed Fuller to stand near an elevator in the station; Fuller did so. McWilliams was not holding handcuffs when he escorted Fuller from the paid area to the wall beside the elevator. After Fuller

---

[1] When reviewing a district court's denial of summary judgment based on qualified or official immunity, we resolve all issues of material fact for the plaintiff. *See Bashir v. Rockdale Cty.*, 445 F.3d 1323, 1327 (11th Cir. 2006). We have done that here.

2

stood near the elevator, he pulled out his cell phone and began sending a text message. Fuller was telling his father that he would be late. McWilliams told Fuller to put his cell phone back in his pocket. Fuller responded, "One second."

About eight seconds after pulling his cell phone out, surveillance video shows that Fuller dropped his cell-phone-holding arm to his side. Seconds later, McWilliams said, "I don't have time for this," and grabbed Fuller's wrist. Fuller then dropped his phone, "pulled away" from McWilliams, and told McWilliams to "get the f**k off [him]."

At this time, White was exiting the staff-room area and saw McWilliams and Fuller. Surveillance video shows that White approached Fuller from behind. When Fuller pulled away from McWilliams, White grabbed Fuller from behind and attempted a takedown maneuver. But White did not "affect" a takedown because he hesitated and placed Fuller back on his feet. When White was unable to locate his handcuffs on his gun belt, he released his hold on Fuller, and McWilliams deployed his taser into Fuller's abdomen one time for five seconds. Fuller fell to the ground when he was tased, and White handcuffed him. The surveillance videos do not show Fuller acting aggressively at any point in the altercation.

The officers did not tell Fuller that he was under arrest until he was lying on the ground post-tasing. White and McWilliams then escorted Fuller to the staff

3

room.  While being led away, Fuller asked what he did wrong and why the taser was deployed against him.  McWilliams unholstered the taser, pointed it at Fuller, and asked "You want some more of this?" or "Don't you want some more?"  Surveillance video captured this moment and shows McWilliams pointing his taser at Fuller after Fuller had been handcuffed.  Once inside the holding area, Fuller again asked why he had been shot with the taser.  McWilliams repeated what he had said before—he "didn't have time" to wait for Fuller to complete his text message to his father.  After being cleared by EMS to remain in custody, Fuller was issued two arrest citations for fare evasion and obstruction.

Sometime later, Fuller sued McWilliams, White, and MARTA under 42 U.S.C. § 1983.  Fuller alleges that the officers used excessive force in violation of the Fourth Amendment.  Alongside his § 1983 claim, Fuller sued for assault and battery and emotional distress under Georgia law.  In the district court, the appellants sought summary judgment based on the defenses of qualified immunity (federal claim) and official immunity (state claims).  They argued that they were entitled to qualified immunity because (1) McWilliams's grab of Fuller's wrist was not excessive force; (2) White's attempted takedown of Fuller was not excessive force; and (3) McWilliams's deployment of the taser against Fuller was not excessive force.  As for the state law claims, the defendants argued that Fuller

4

failed to prove they acted with actual malice or intent to injure, as required by Georgia state law.

The district court denied summary judgment, holding that a jury could conclude, when viewing the facts in Fuller's favor, that the officers exercised excessive force in violation of the Fourth Amendment, that their actions violated a clearly established right, and that they acted with actual malice or intent to injure. As a result, the court held that they were not entitled to qualified or official immunity as a matter of law.

## DISCUSSION

"Our jurisdiction to review a denial of qualified immunity depends on the type of issue involved." *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000). Where there are "legal issues underlying the qualified immunity determination," which is part of the "core qualified immunity analysis," we properly exercise jurisdiction over the appeal. *Id.* (internal quotation marks omitted).

Conversely, we may not exercise jurisdiction when the "issue presented in the qualified immunity context challenges only sufficiency of the evidence relative to a predicate factual element of the underlying constitutional tort." *Id.* at 1296. (internal quotation mark omitted). We lack jurisdiction in that circumstance because it "involve[s] the determination of 'facts a party may, or may not, be able

to prove at trial'" and therefore cannot be an "immediately appealable final decision[]." *Id.* (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)).

With these standards in mind, we conclude that the appellants' arguments merely raise questions of evidence sufficiency; they do not challenge the district court's legal conclusions. Though the appellants cloak their arguments under the guise of a legal issue, the appellants assert, at bottom, that the district court would have applied qualified and official immunity if it had viewed the facts in their favor. Indeed, the appellants maintain that McWilliams's grab of Fuller's wrist and his deployment of the taser did not violate clearly established law because the grab was to arrest Fuller after Fuller failed to comply with McWilliams's command and because the taser was deployed only after Fuller physically resisted arrest. As for White, the appellants argue that he used only minimal force to effect Fuller's arrest and did so after he witnessed Fuller's physical resistance. The appellants also argue that the district court was wrong to rely on our decision in *Fils v. City of Aventura*, 647 F.3d 1272 (11th Cir. 2011). In their view, *Fils* cannot have clearly established that McWilliams violated Fuller's Fourth Amendment rights, because the facts in *Fils* are distinguishable from the facts here.

But these arguments hinge on factual disputes. Contrary to the appellants' rendition, Fuller claims that he never failed to comply with any commands, that the officers never told him he was under arrest during the use of force, that he was

6

never antagonistic toward officers, and that he did not resist arrest. Given these facts, Fuller contends the officers' use of force was unwarranted. The district court, as required at this stage, properly resolved these disputed facts in Fuller's favor, not the appellants' favor. *See Bashir*, 445 F.3d at 1327. Crucially, the appellants do not assert that, even under Fuller's version of the facts, they are entitled to qualified or official immunity as a matter of law. *See Moniz v. City of Fort Lauderdale*, 145 F.3d 1278, 1281 (11th Cir. 1998) (holding that when "the appeal is based on an assertion that, even on the plaintiff's version of the facts, the defendants are entitled to qualified immunity as a matter of law, we have jurisdiction to review the denial of summary judgment interlocutorily"). In fact, the appellants repeatedly argue throughout their opening brief that, *under their facts*, the district court's legal conclusions were faulty. This, the appellants cannot do. *See id.* at 1280.

The appellants' *Fils* argument suffers from the same infirmity—it too is a factual question dressed as a legal one. The appellants do not dispute the applicability of *Fils* under Fuller's version of the facts. Instead, they argue *Fils* is not applicable if the disputed facts had been resolved in their favor—if we believe, as they do, that Fuller ignored commands, resisted arrest, and exhibited hostility. And though appellants argue in their reply brief that their conclusions would be

7

true "even if [we] were to accept the facts outlined by the district court," in that same paragraph they list disputed facts as "undisputed."

Accordingly, because this appeal attempts to challenge the district court's factual determinations and the evidence sufficiency, we lack jurisdiction to consider this interlocutory appeal. We therefore dismiss it and remand the case for further proceedings in the district court.

**DISMISSED.**